IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JACOB EUGENE OMAN, by and through DANA EDMONDSON AND PAUL OMAN, CO-GUARDIANS OF INCAPACITATED INDIVIDUAL JACOB EUGENE OMAN, <br><br> Plaintiffs, <br><br> v. <br><br> BERRIEN COUNTY, CHUCK HEIT, CELENA HERBERT and OTHER UNKNOWN MEMBERS of the BERRIEN COUNTY SHERIFF'S OFFICE, in their individual and official capacities, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Cause No.: 26-cv- <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**COMPLAINT AND JURY DEMAND**

**NOW COMES** Plaintiff, Jacob Eugene Oman, ("Jacob") by and through Dana Edmondson and Paul Oman, Co-Guardians of Incapacitated Individual Jacob Eugene Oman through attorney John Malevitis, Esq., of Paladin Law, Ltd. and in support of Complaint against the above-named Defendants here state as follows:

**Parties**

1.      Plaintiff Jacob Eugene Oman is a resident of Three Oaks Michigan, County of Berrien, State of Michigan. On May 19, 2026, an Order regarding appointment of guardian of incapacitated individual was entered by the Circuit Court of the State of Michigan, Probate Court, Berrien County in Case Number 2026-0268-GA-M by Judge Mabel Johnson Mayfield.

2.      Defendant Berrien County is a municipal corporation and governmental subdivision which is organized and exists under the laws of the State of Michigan.

3. Defendant Chuck Heit was the Sheriff employed by Berrien County Sheriff's Office and/or Defendant Berrien County and was acting in his individual and official capacity, upon information and belief, at all relevant times alleged herein.

4. Defendant Celena Herbert is and/or was the Berrien County Jail Administrator who was acting under color of law, in her individual and official capacity, and within the course of scope of her employment at all times mentioned herein.

5. Defendant(s) Unknown Members of the Berrien County Sheriff's Department are sworn officers who had exclusive custody of Plaintiff after he was taken into custody and before he was transferred to the Hospital.

### Jurisdiction and Venue

6. All relevant events giving rise to this lawsuit occurred in the County of Berrien, State of Michigan.

7. That this lawsuit arises out of Defendants' violations of Plaintiff's federal constitutional rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution, and consequently, Plaintiff has a viable claim for damages under 42 U.S.C. § 1983.

8. Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1331 [federal question], 28 U.S.C. § 1343 [civil rights].

9. At all relevant times, Defendants acted under color of the state law of Michigan.

10. That the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00) not including interest, costs, and attorney fees.

**Facts**

11.     Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

12.     On Sunday March 1, 2026, in the early morning hours, Plaintiff's mother, Dana Oman ("Dana") called the police to intervene in a domestic matter concerning her son Jacob Oman, the plaintiff.

13.     Four Police Officers arrived at the home where plaintiff was located.

14.     Dana told the officers that she was very concerned about Jacob's well-being because of alcohol consumption over the past hours\weeks and months and mentioned that they may need to call an ambulance.

15.     As the officers were processing Jacob, Dana noticed that Jacob was showing signs of physical stress all of a sudden because the police were at the house.

16.     Dana noticed Jacob's stress level at this point in time had taken a toll on him. His skin became pale and  he looked ill. Dana thought Jacob was going to pass out. Dana told the police that Jacob had barely been eating,

17.     Dana told the police officers that she was worried about Jacob going through withdrawals when he was being incarcerated.

18.     Dana, again, suggested Jacob may need an ambulance.

19.     The police decided to take Jacob into custody.

20.     The police did not ask Dana if she wanted press charges at this point. The police just took Jacob into custody.

21.     Dana spoke with an officer later that morning about picking up the police report and she asked him what Jacob's Alcohol Blood Level ("BAL") was.

22.     Officer Zeiger said the BAL was .30 at the hospital that morning.

23.     The doctor that examined Jacob at the hospital  said Jacob could be taken to jail.

24.     Dana again stressed her concern to the arresting officer about Jacob's withdrawal symptoms that Jacob may experience as a result of his current and long-term alcohol consumption /condition.

25.     On March 1, 2026, at approximately 9:18 am, Paul Oman made a to call the Berrien County Jail in St. Joseph, Michigan and talked to a nurse at the nurses station named Michelle.

26.     Paul Oman told the nurse her son's name and told her that he had been arrested and told her he needed to be watched.

27.     Paul Oman again made his concerns about Jacob's withdrawal that he may go through because of his alcohol consumption and that he has been heavily drinking for weeks and months.

28.     On March 2, 2026, Paul Oman did not receive any information about the well-being of his son, Jacob.

29.     On March 3, 2026, concerned about Jacob's well-being,  plaintiff's family called the Berrien County Jail and talked to the Jail nurses station at approximately 5:30. The nurses had not received any update on Jacob's condition.

30.     At approximately 6:40 pm on March 3, 2026,  Paul Oman received a call from the jail. It was Jacob asking Paul if he had called the jail  and Jacob was informed that both he and his mother Dana were worried about him and loved him very much.

4

31.    At that time, Jacob wanted to get bailed out and enter a rehabilitation program.

32.    On March 4, 2026, Paul and Jacob's friends did not hear from Jacob.  Jacob was still in police custody.

33.    On March 5, 2026, at about 10:10 am, Paul reached out to  Jacob's friend, Dan, and asked if he heard from Jake and Dan said "No". Neither one of them had heard from Jacob.

34.    Then, Dan  said he was  going  to  go  bail  out  Jacob.

35.    Dan  called  Paul  at approximately 10:30 am  and  stated  that  he tried  to bail Jacob out of jail and  the  jail  attendant  told  him  that  Jacob  had  been released from jail.

36.    Neither mother Dana or father Paul and/or other members of Jacob's family were ever made aware of Jacob's release.

37.    At approximately  1:00 pm on March 5, 2026, Jacob's family was informed that Jacob was in the hospital.

38.    Dana had received a message from the Corwell Health Hospital from the nurse/case manager who asked Dana to call her back.

39.    The nurse/case manager told Dana and Paul that Jacob was admitted to the hospital and was unresponsive. He had suffered a seizure followed by cardiac arrest at the jail between 7 and 8:00 am.  He was brought to the emergency room in very critical condition.

40.    When Jacob's family observed Jacob, he was black and blue from his head to his feet with severe bruising all over his body. These physical injuries were inflicted while

5

Jacob was in the defendants' care and custody. Jacob also sustained a broken foot while in the defendants' care and custody. The nurses and doctors stated that his kidneys were not processing, liver function was poor and the medical staff asked permission to put a tube in for dialysis right away.

41.    Jacob was not in the same condition when he left his home and did not complain of these injuries when he spoke with his family.

42.    On Friday March 6, 2026, Jacob had additional testing as the swelling, bruises and injuries had not improved.

43.    On Saturday March 7, 2026, there was no change in kidney or liver function. Jacob underwent another round of dialysis.

44.    On Sunday March 8, 2026, Jacob was still not improving and the doctors recommended taking out the ventilator tube and installing a trach to continue his breathing assistance. The doctors also wanted to install a feeding tube into the stomach.

45.    As a result of a fall or other medical complications while in the custody of Defendants, Jacob suffered brain damage as a result of Anoxic Brain Damage which was caused by a lack of oxygen to the brain.

46.    Because of the lack of information as to the length of time that Jacob was without oxygen, the doctors are unable to provide a prognosis for any recovery.

47.    Jacob was in ICU from March 5, 2026, until he was transferred on March 28, 2026, to Corewell Health Lakeland Hospital in St Joseph Michigan.

48.    On March 28, 2026, Jacob was transferred to Select Specialty Hospital/ Corewell Health Grand Rapids Michigan.

49.    Plaintiff continues to have medical complications related to the injuries received while in the custody of the Defendants.

**COUNT I**
**42  USCA Section 1983**
**Violations of the Fourteenth Amendment**

50.    Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

51.    On or about March 1, 2026, through March 8, 2026,  Plaintiff began experiencing medical symptoms related to his compromised mental state and seizures.

52.    Plaintiff's relatives submitted medical information about the Plaintiff, informing Defendants of the serious medical need of the plaintiff.

53.    Unknown officers and agents of Defendant(s) Berrien County, The Berrien County Sheriff's Department, Chuck Heit and Celena Herbert  were aware of Plaintiff's condition but failed to provide adequate or timely medical care, delayed treatment, and/or denied care entirely.

54.    Plaintiff's condition constituted a serious medical need, including the necessity to resuscitate him to save his life.

55.    Despite knowledge of this serious condition, Defendants acted with deliberate indifference by:

a)    Ignoring medical requests
b)    Refusing treatment
c)    Delaying care unnecessarily
d)    Providing grossly inadequate care

56.    As a direct result of Defendants' actions, Plaintiff suffered severe injury, pain, medical expense, emotional distress and permanent injuries.

57.     Plaintiff also seeks an award of punitive damages for the injuries received as a result of the reckless and deliberate indifference to the care of Plaintiff while in the custody of the Defendants and his attorney fees and litigation expenses as per statute.

58.     The Fourteenth Amendment to the United States Constitution establishes that Plaintiff has the right to be free from the deprivation of life, liberty and bodily security without due process.

59.     Defendants deprived Plaintiff of due process when with utter and deliberate indifference or with extreme gross negligence they failed to provide necessary and urgent medical care to Plaintiff when Plaintiff was in their exclusive custody and control while locked up in the Berrien County Jail.

60.     Defendants are not entitled to qualified immunity because they deprived Plaintiff of a liberty interest without due process.

61.     Defendants' illegal and unconstitutional acts were the direct and proximate cause of Plaintiff's deprivation of Plaintiff's constitutional rights.

62.     Due to Defendants' actions, inactions or omissions, Plaintiff's Fourteenth Amendment rights were violated and pursuant to 42 U.S.C. § 1983, Plaintiff respectfully requests this Honorable Court to award exemplary, compensatory and punitive damages, plus costs, interest, attorney fees as set forth in 42 U.S.C. § 1988.

Wherefore, Plaintiff requests that judgment be entered in his favor and that he be awarded:

A.     Compensatory damages in an amount exceeding $75,000.00 to be proven at trial, for damages including but not limited to, medical and other expenses, mental anguish, pain and suffering, permanent injuries and emotional distress.
B.     Punitive Damages in an amount in excess of $1,000,000.00.
C.     Interest
D.     Attorney Fees and litigation expenses.

E.    Any other additional relief that the Court deems necessary and appropriate.

## COUNT II
### Berrien County Constitutional Violations

63.    Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

64.    Defendants Berrien County and the Berrien County Sheriff's Department acted intentionally, recklessly and with deliberate indifference when it practiced and/or permitted customs and/or policies and/or practices that resulted in constitutional violations to Plaintiff.

65.    These unlawful customs, policies and/or practices included, but were not limited to the following:

a) Failed to train and supervise its employees in basic medical treatment and practices to save an in-custody person's health and life;
b) Failed to supervise, review and/or train employees whom Defendants Berrien County and the Berrien County Sheriff's Department knew or should have known were violating or were prone or destined to violate citizens' constitutional rights, thereby permitting and/or encouraging its employees to engage in illegal or reckless conduct;
c) Failed to require its employees to comply with established policies and/or procedures and to discipline or reprimand employees who violated these established policies.

66.    Chuck Heit and Celena Herbert  acted as the final decision makers for Berrien County and the Berrien County Sheriff's Department when they failed to provide adequate and timely medical care for Plaintiff while in the custody of the Defendants which caused Plaintiff serious and significant injuries.

67.    Despite knowledge of this serious condition, Defendants acted with deliberate indifference by:

9

e) Ignoring medical requests
f) Refusing treatment
g) Delaying care unnecessarily
h) Providing grossly inadequate care

68. As a direct and proximate result of Defendants' violations of Plaintiff's constitutional rights, Plaintiff suffered severe injury, pain, medical expense, emotional distress and permanent injuries.

69. Plaintiff also seeks an award of punitive damages for the injuries received as a result of the reckless and deliberate indifference to the care of Plaintiff while in the custody of the Defendants and his attorney fees and litigation expenses.

Wherefore, Plaintiff requests that judgment be entered in his favor and that he be awarded:

A. Compensatory damages in an amount exceeding $75,000.00 to be proven at trial, for damages including but not limited to, medical and other expenses, mental anguish, pain and suffering, permanent injuries and emotional distress.
B. Punitive Damages in an amount in excess of $1,000,000.00.
C. Interest
D. Attorney Fees and litigation expenses.
E. Any other additional relief that the Court deems necessary and appropriate.

**COUNT III**
**Gross Negligence---Failure to Render Appropriate Medical Care**

70. Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

71. On or about March 1, 2026, through March 8, 2026,  Plaintiff began experiencing medical symptoms related to his compromised mental state and seizures.

72. Plaintiff's relatives submitted medical information about the Plaintiff, informing Defendants of the serious medical needs of the plaintiff.

73.     Unknown officers and agents of Defendant(s) Berrien County, The Berrien County Sheriff's Department, Chuck Heit and Celena Herbert  were aware of Plaintiff's condition but failed to provide adequate or timely medical care, delayed treatment, and/or denied care entirely.

74.     Plaintiff's condition constituted a serious medical need, including the necessity to resuscitate him to save his life.

75.     Despite knowledge of this serious condition, Defendants acted with deliberate indifference by:

     i)     Ignoring medical requests
     j)     Refusing treatment
     k)     Delaying care unnecessarily
     l)     Providing grossly inadequate care

76.     As a direct result of Defendants' actions, Plaintiff suffered severe injury, pain, medical expense, emotional distress and permanent injuries.

77.     Plaintiff also seeks an award of punitive damages for the injuries received as a result of the reckless and deliberate indifference to the care of Plaintiff while in the custody of the Defendants and his attorney fees and litigation expenses as per statute.

Wherefore, Plaintiff requests that judgment be entered in his favor and that he be awarded:

A.     Compensatory damages in an amount exceeding $75,000.00 to be proven at trial, for damages including but not limited to, medical and other expenses, mental anguish, pain and suffering, permanent injuries and emotional distress.
B.     Punitive Damages in an amount in excess of $1,000,000.00.
C.     Interest
D.     Attorney Fees and litigation expenses.
E.     Any other additional relief that the Court deems necessary and appropriate.
F.

Respectfully submitted,

_____
/s/ John L. Malevitis, Esq.

Paladin Law, Ltd.
109 Symonds Drive
Unit 156
Hinsdale, Illinois 60522
312/933-1100
Illinois Atty. No.: 6184398
johnny@thepaladinlawyer.com